HALL & SPENCER v. STEWART.

1. **Contract:** CONDITIONS: BREACH OF: DAMAGES. By the terms of a written contract, the defendant was to furnish ice at an agreed price, the plaintiffs were to make sales, and upon demand give defendant a satisfactory bond indemnifying him against loss. Defendant was to make no sales in plaintiff's territory, and the profits were to be equally divided. The defendant demanded a bond; one was tendered, but the amount of the penalty not being satisfactory, it was refused, and the defendant gave notice that he considered the contract terminated: *Held*, that if defendant violated the contract before demanding the bond, he became liable for the damages occasioned thereby; and that if the plaintiffs desired to continue the contract in force, notwithstanding such breach, they should have executed the bond as provided in the contract.

2. ———: BREACH OF BOND: LIABILITY OF SURETY. In such case, an instruction asked by plaintiffs, that the penalty of the bond did not limit the liability, and that the sureties would be liable for the full amount of damages sustained by defendant, was properly refused.

3. ———: ———: ———: RIGHT TO DEMAND. Where the defendant's right to demand a bond was fixed absolutely by the contract, and the object in requiring it was to secure indemnity against any loss thereafter, he was not required to show that plaintiffs had been guilty of any breach of the contract before he could demand the bond.

4. **Practice:** INSTRUCTION: DUTY OF PARTY TO ASK. If a party desires, in the instructions, a specific reference to a particular fact, he should ask an appropriate instruction thereon.

5. ———: ———: ERROR WITHOUT PREJUDICE. A court cannot embrace all the law applicable to a case in one instruction, and it is no ground of objection to an instruction that it fails to do so; and where the jury must have found, and based their verdict upon, a certain fact, an instruction containing an incorrect rule of damages, in case they found otherwise, was error without prejudice.

6. **Contract:** BREACH OF: FAILURE TO FURNISH BOND. The contract being that the plaintiffs, on demand, should furnish a bond satisfactory to the defendant, the refusal or neglect of the defendant, to state what stipulations he desired in it, would not excuse the plaintiffs for failing to furnish a satisfactory bond.

7. ———: ———: DAMAGES: LIABILITY FOR. The defendant having bound himself by his contract, not to sell ice in the territory worked by plaintiffs, he would be liable if he made such sales, while the contract was in force, to those who otherwise would have purchased through the plaintiffs.

8. ———: ———: ———: LIMIT OF RECOVERY. Under the terms of the contract, the limit of recovery, for sales made by defendant in plaintiffs territory, was one-half of the profits on the ice actually delivered. The defendant would not be liable for the profits on sales contracted, where the vendees failed to receive and pay for the ice.

*Appeal from Shelby District Court.*

TUESDAY, JUNE 13.

THE plaintiffs bring this action upon an alleged breach of an agreement to deliver ice upon contracts made by the plaintiffs, on account of which the plaintiffs claim damages in the sum of $6,024. There was a jury trial, resulting in a verdict and judgment for plaintiffs for $500. The plaintiffs appeal. The material facts are stated in the opinion.

*Ament & Sims* and *McDill & Sullivan*, for appellants.

*Sapp & Lyman* and *Clinton, Hart & Brewer*, for appellee.

DAY, J.—The defendant resides at Council Bluffs, and the plaintiffs at Creston. During the season of 1878, the defendant had a large quantity of ice in store at Council Bluffs. On the fifteenth day of April, 1878, the plaintiffs and the defendant entered into a written contract, wherein it was agreed that the defendant should fill all orders for ice the plaintiffs might send him, in lots not less than one. car load of ten tons, when accompanied by the money, or bank certificates, or railroad company receipts; the ice to be sold by the first day of November, at the following minimum prices: for ice sold during April and May, five dollars per ton; that sold

Hall & Spencer v. Stewart.

during June and July, six dollars per ton; and that sold in the following months, seven dollars per ton. The defendant reserved the right to fill what orders he might receive in territory not worked by the plaintiffs. The defendant was to be at the expense of loading and packing, and the plaintiffs were to be to all the other expenses of traveling, advertising, telegrams, etc. Stewart was to retain all the money for sales, and when the ice was all sold, was to deduct five dollars per ton and divide the remainder equally between himself and the plaintiffs. The plaintiffs agreed to handle no other ice except a small quantity which they had at Creston, for retail purposes, and if any of the ice remained unsold on the first day of November, to pay for it at the rate of $5.00 per ton. It was further agreed that on or after the fifteenth day of July, the defendant should have the right to call upon the plaintiffs for bonds, to indemnify him against loss by reason of their failure to perform their part of the contract, and that if they should fail to furnish bonds, which should be satisfactory to the defendant, within ten days after the deposit of notice to them in the office of any telegraph line in Council Bluffs, having a place of business in Creston, the defendant should have the right to cancel the contract.

On the fifteenth day of July, 1878, the defendant placed in the telegraph office at Council Bluffs, a dispatch, signed by himself, and addressed to the plaintiffs at Creston, as follows: "I now demand indemnifying bond as per our contract." On the 26th day of July, the plaintiffs tendered a bond in the penal sum of $3,000, executed by themselves as principals, and by I. Ingersoll, John Wilson, and A. B. Havens, all of Leavenworth City, Kansas, sureties. On the same day, the defendant, through his attorneys, refused to accept the bond on the ground of insufficiency of the penalty and non-residence of the sureties, and lack of satisfactory evidence of their pecuniary responsibility, and notified both the plaintiffs and their attorneys that defendant considered the contract at an end,

and would proceed as though no such contract had ever been made.

I. The plaintiffs introduced testimony tending to show that prior to July 26, they procured and sent in orders for ice, which the defendant did not fill, and that the defendant sold ice within the territory worked by plaintiffs. As pertinent to this testimony, the plaintiffs asked the court to instruct the jury as follows: "If the jury shall find, from the evidence, that the plaintiffs, after the making and delivery of the contract on April 15th, 1878, between the plaintiffs and defendant for the delivery of ice upon orders originating with the plaintiffs, complied with all the terms and conditions of said contract on their part, if up to and including the fifteenth day of July, 1878, under all the circumstances surrounding the transaction, the plaintiffs had done and performed all that could reasonably have been required of them in the execution of the contract, and the jury shall further find that the defendant, prior to said 15th day of July, 1878, in violation of the terms and conditions of said contract, sold and shipped ice by the car load to customers of the plaintiffs, and into territory then being worked by the plaintiffs, then, and thereafter, the defendant had no right to demand bonds of indemnity from the plaintiffs under the terms of said contract. In other words, "one party to a contract cannot complain of a failure to perform by the other, if his own breaches have contributed to defeat the purposes of the contract."

The refusal to give this instruction, the plaintiffs assign as error. If the defendant violated his contract before the time that he was authorized to call upon the plaintiffs for indemnity, he became thereby liable for the damages which his breach occasioned. The plaintiffs, also, it may be conceded, were thereby exonerated from proceeding further with the contract, and discharged of all liability to damages for a refusal to proceed. But they were not authorized to refuse to go further with the contract, and then recover damages as

1. CONTRACT: conditions: breach of: damages.

though they had performed it. They agreed absolutely that in the event of their failure to furnish satisfactory bond upon demand, the contract might be canceled. If they desired to continue the contract in force, and to recover damages for any breaches by the defendant after the 26th day of July, it was their duty to execute a bond as they agreed, notwithstanding the fact that the defendant may have rendered himself liable for damages for failures occurring before the 15th day of July. The contract could be continued in force only by executing the bond as agreed. Of course, if the contract should be canceled in strict accordance with its provisions, there could be no further breaches of it.

II. The plaintiffs assign as error the refusal of the court to instruct, in substance, that the penalty named in the bond *2. ——:* does not measure nor limit the liability of the *breach of bond: liability of surety.* plaintiffs, nor their sureties, but that under the terms and conditions of the bond, the sureties were liable to the defendant for all the damages he might sustain. That this instruction was properly refused, see *Sweem v. Steele*, 5 Iowa, 352; *S. C.*, 10 Id., 374.

III. In the second instruction, the court after calling the attention of the jury to the several covenants on the part of *3. ——: ——: right to demand.* the plaintiffs, instructed them as follows: "Now the defendant was entitled to a bond in an amount sufficient to afford him a reasonable security for all damages, which might result to him from a failure by plaintiffs to perform any one, or all of these covenants. He also had a right to demand that the bond should be executed by parties, as sureties for the plaintiffs, who were amply responsible, pecuniarily, for the amount of the bond. He also had the right to demand that the sureties should be so situated as that he could pursue his remedy against them, should a right of action accrue upon the bond, without unreasonable trouble, expense, or delay. You are, then, to consider, in determining whether defendant rightfully terminated the contract, the amount and character of the property in question, the price at which

plaintiffs were to take what should remain unsold at the end of the season, the demand in the market for that kind of property, the penalty of the bond tendered, which is $3,000, the pecuniary condition of the parties who signed it, as sureties, the fact that they resided in another State, whether the defendant had any knowledge of them and their conditions, and the like circumstances. And if you believe, from all the circumstances, the defendant, in rejecting the bond, did no more than a man of reasonable prudence and care, in the conduct of his own business, would have done under like circumstances, it will be your duty to find that the termination of the contract by him was rightful."

The plaintiffs object, that instead of confining the deliberations of the jury to the circumstances named in this instruction, they should have been told that before defendant could demand a bond, or declare a breach of the contract for the failure to furnish it, the defendant must show that there had been a failure on the part of the plaintiffs either to take orders, or be at the expense of traveling, advertising, or telegraphing, or selling above the minimum price, and that it was reasonably certain there would be a failure to dispose of sufficient ice to hold the defendant harmless at the end of the season. In this position, the appellants are clearly in error. The object in requiring the bond was to secure indemnity for breaches which might occur after July 15th. The fact that no breaches had occurred before that time, would not affect the right of the defendant to demand a bond. His right to demand a bond on or after July 15th, is fixed absolutely by the contract. The plaintiffs also complain of this

4. PRACTICE: instruction, because the court does not direct the instruction: duty of party. jury that the contract itself furnishes indemnity to the amount of plaintiffs' share in the profits on all sales made during the season, which amount was to remain in defendant's hands during the season. This fact may well have escaped the attention of the court, as it did probably that of plaintiffs' counsel, during the trial. If the plaintiffs desired

specific reference to this fact, they should have requested an appropriate instruction thereon.

IV.   The plaintiffs complain of the following instruction: "If you find that the contract was rightfully terminated, this

5. ——: ——: would dispose of all questions with reference to
error without
prejudice.    sales made by the defendant after July 26th, and to any orders for ice obtained by plaintiffs after that date, and not filled by the defendant.   But if you do not find that it was rightfully terminated, your inquiry with reference to sales by defendant in territory worked by plaintiffs, and orders obtained by or originating with them, and not filled by defendant, must relate to the whole period between April 15th, the date of the contract, and the first of November."

The plaintiffs object that this instruction does not give the jury the correct rule of damages in the event they should find that the contract was not rightfully terminated on the 26th of July.   This instruction does not attempt to give any rule of damages.   It simply directs the jury to what sales their inquiry must relate.   A court cannot in one instruction embrace all the law applicable to a case, and it is no ground of objection to an instruction that it does not do so.   Besides, the jury must have found that the contract *was* rightfully terminated; and hence, if the court had even given an incorrect rule of damages in the event the jury should find the contract was not rightly terminated, the error would have been without prejudice.

V.   The plaintiffs complain of the giving of the following instruction:   "Under the terms and conditions of the con-

6. CONTRACT:  tract sued on, the defendant was not required to
breach of:
failure to    have anything to do with drawing up the bond
furnish bond.  therein provided for, nor to inform the plaintiffs what stipulations he wished in it.   The contract fixed what the bond was to be, and a failure on the part of the defendant to answer any request from plaintiffs that he would draw up a bond, or to inform plaintiffs what stipulations he wished in it, in no way excuses the plaintiffs for a failure to furnish

such bond when properly demanded, if they did so fail to furnish such bond."

It is claimed that this instruction was not applicable to the issues nor the testimony, and that it was calculated to mislead. The instruction unquestionably embodies a correct presentation of the law. It may have been drawn to meet positions taken by the counsel in argument, and if it was, it was correctly given. If no such position was taken, it clearly could not have worked any prejudice.

VI. The plaintiffs complain of the giving of the following instruction: "If, at any time while the contract was in force, the defendant sold any of the ice which plaintiffs had the right at the time of the sales to sell under the contract, in the territory being worked by them, this would constitute a breach of the contract. If they have shown by the evidence that defendant did make such sales to the persons named in their petition, or any of them, in territory worked by them while the contract was in force, *and have further shown that said parties making the purchases would, but for the act of the defendant, in selling to them, have purchased through them,* they are entitled to recover from defendant the same proportion of the money received by defendant on account of such sales, as they would be entitled to had they made the sales themselves." It is claimed that the italicised portion of this instruction is erroneous. We think it is correct. The plaintiffs have not sustained damage on account of sales made by defendant in their territory, unless the parties to whom the sales were made, would, but for the sales, have purchased of plaintiffs. It is claimed, also, that this instruction is in conflict with the ninth instruction given. This position is also erroneous. The ninth instruction simply informs the jury what sales are to be regarded as made by the defendant.

VII. The plaintiffs complain of the 10th and 12th instructions to the jury, because they limit the amount of plaintiffs' recovery on account of sales made by defendant in plaintiffs' territory, during the con-

tinuance of the contract, to one-half of the profits upon the ice actually delivered. The plaintiffs claim that they are entitled to one-half of the profits on the ice sold, whether delivered or not. In our opinion, these instructions, as applied to the evidence in the case, are correct. Surely the defendant should not be required to pay one-half of the profits on sales contracted, notwithstanding the fact that the vendees may have failed to receive and pay for it.

VIII. It is urged, lastly, that the verdict is not sustained by the evidence. Without attempting to set out or discuss the evidence, we are of opinion, that under the instructions of the court, which we approve, the evidence fully sustains the verdict. We discover no error in the record.

AFFIRMED.